Robert L. Starr (183052)
robert@starrlaw.com
Adam M. Rose (210880)
adam@starrlaw.com
Theodore R. Tang, Esq. (313294)
theodore@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23901 Calabasas Road, STE #2072
Calabasas, CA 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
Calabasas Luxury Motorcars, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BMW NORTH AMERICA, LLC; BMW FINANCIAL SERVICES NA, LLC; and DOES 1 to 10,<br><br>Defendants. | Case No.: 2:21-cv-08825-DMG (ASx)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>1. Violation of Cal. Bus. & Prof. Code § 17200<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1. Plaintiff Calabasas Luxury Motorcars brings this action to remedy and enjoin Defendants BMW North America, LLC's and BMW Financial Services NA, LLC's (collectively "Defendants") violation of California's Unfair Competition Law ("UCL").

2. Specifically, Defendants have refused to allow non-BMW dealerships to accept leased BMW vehicles as trade-ins and refused to allow consumers to sell their leased vehicles to non-BMW dealerships.

3. As a consequence, Plaintiff and others similarly situated have suffered

-1-

economic injury since Plaintiff and members of the Class have been entirely prevented from purchasing used BMW vehicles from lessees as third party payoffs; or have been entirely prevented from accepting these leased BMW vehicles as trade-ins toward non-BMW brand vehicles.

4. BMW has engaged in this unfair and unlawful conduct for no other purpose than to enrich BMW franchise dealers at the expense Plaintiff and those similarly situated.

## **PARTIES**

5. Calabasas Luxury Motorcars ("Plaintiff") is a California corporation, with its principal place of business located in Los Angeles County.

6. Defendant BMW North America, LLC ("BMW") is a Delaware limited liability company with its principal place of business in Woodcliff Lake, New Jersey.

7. All acts and omissions of BMW's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and BMW is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

8. Defendant BMW Financial Services NA, LLC ("BMWFS") is a Delaware limited liability company with its principal place of business located in Woodcliff Lake, New Jersey.

9. All acts and omissions of BMWFS's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and BMWFS is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

10. Plaintiff is unaware of the true names or capacities of the Defendants sued herein as DOES 1 through 10, ("Doe Defendants"), and therefore sues the Doe Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such Doe Defendants when such information has been obtained. Plaintiff is informed and believes, and based on

such information and belief alleges, that each of the fictitiously named Doe Defendants participated in some way in the wrongful acts and omissions alleged.

## JURISDICTION AND VENUE

11. The Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C § 1332(a).

12. At least one member of the California Class is a citizen of a State different from at least one Defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

13. The claims asserted by the putative class, when aggregated as required by 28 U.S.C. § 1332(d)(6), exceeds the sum of $5,000,000 within the meaning of 28 U.S.C. 1332(d)(2).

14. The number of members of all putative classes alleged herein exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

15. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this claim occurred in the Central District of California.

16. This Court has supplemental jurisdiction over the state law UCL claim arising under statutory or common law pursuant to 28 U.S.C. § 1367 because the claim arises from a common nucleus of operative facts such that adjudication of both state and federal claims furthers the interests of judicial economy.

## FACTUAL ALLEGATIONS

17. As a direct outgrowth of the COVID-19 pandemic, there has been a severe disruption to the global supply chain of motor vehicles.

18. This squeeze on vehicle production resulted in a drastic shortage in supply while, at the same time, consumer demand for vehicles has dramatically risen. Unsurprisingly, this confluence of low supply and high demand has catapulted used and new car prices to record highs.

19. This unprecedented demand for vehicles has created a situation where lessees whose lease terms have not yet expired have found themselves in possession of a vehicle whose market value—as calculated by California Civil Code § 2987 (the Vehicle Leasing Act)—is worth significantly more than the amounts owed on their respective leases.

20. Due to this increased vehicle equity, consumers recognized that they are able to trade-in or sell their vehicles to cash in on the vehicle's increased equity. Because the value of the vehicles exceeds the "payoff price," lessees have sought to either terminate their lease early to then sell the vehicle, or sell their vehicle at the end of their lease, rather than turning in the vehicle to Defendants.

## **THE STRUCTURE OF VEHICLE LEASES & TRADE-INS**

21. In calculating how much of a lease payment to charge consumers, a leaseholder factors in the "expected depreciation of the vehicle" in determining the monthly lease payment. The prevailing interest rate is another factor used in determining the monthly payment. The lease agreement itself will indicate that the vehicle has a residual value at the end of the lease. This residual value is theoretically intended to correlate with the amount of money that the vehicle will be worth at the end of the lease. The residual value, plus any other fees and costs, is the amount that must be paid if the lessee wishes to exercise the lease's purchase option at the end of the lease.

22. When the value of the vehicle winds up being higher than the payoff during the term of the lease, or winds up being worth more than the residual value at the end of the lease, then the vehicle has equity. If the vehicle has equity, this is because the lessee was paying more money than was actually necessary to cover the predetermined interest rate, the predetermined profit, and the actual depreciation of the vehicle's value during the term of the lease. Furthermore, in some circumstances, this may also occur if the vehicle goes up in value during the term of the lease.

23. With regard to BMWFS' closed-end consumer vehicle lease products, the consumer is always entitled to purchase the vehicle during the term of the lease, or at the end of the lease.

24. Additionally, pursuant to the Vehicle Leasing Act, the consumer lessee of a BMWFS closed end lease is entitled to trade in the vehicle during the term of the lease. If there is equity in the lease, the lessee can cash in on the vehicle's equity, either using the trade in value as a down payment for the purchase or lease of another vehicle or just collecting a cash payment for the equity. Vehicles being traded in is a common, established transaction in the automobile industry. In fact, even if there is not equity, or negative equity, consumers can still trade in their vehicles.

25. A practical example of this process is when a lessee takes their BMW to a non-BMW brand dealer; trades in their BMW for a new vehicle by transferring the lease's purchase option over to a non-BMW brand dealer; and the non-BMW brand dealer then utilizes the residual value of the "trade-in" towards the consumer's purchase or lease of a new, non-BMW vehicle.

26. Specifically, Cal. Vehicle Code § 11709.4 sets forth the manner in which a licensed motor vehicle dealer is supposed to "purchase or obtain a vehicle in trade-in a retail sale…[which] is subject to a prior credit or lease balance" if, amongst other things, the dealer "tender[s] the agreed upon amount as provided in the written agreement to the lessor…or to the legal owner reflected on the ownership certificate, or to the designee of that lessor or legal owner within 21 calendar days of purchasing or obtaining the vehicle in trade." [Cal. Vehicle Code § 11709.4(a)(1)].

27. It should be noted that although the Vehicle Leasing Act does not explicitly vest within all licensed dealers the ability to accept trade-ins, it must be assumed that the legal right to accept trade-in vehicles necessarily exists. In other words, it would be implausible for the Legislature to regulate all dealers' conduct with respect to accepting trade-ins if dealers did not have the right to accept, and consumers did not have the right to present, "trade-ins" in the first instance.

28. Civil Code § 2987 discusses a "Lessee's right to early termination of lease contract; conditions; [and] notice." In explaining a consumer's rights, subdivision (f) states, "Subdivisions (b) to (d), inclusive, do not apply if, prior to the scheduled expiration date specified in the lease contract, the lessee terminates the lease and purchases the vehicle or trades in the vehicle in connection with the purchase or lease of another vehicle."

29. Pursuant to Cal. Civil Code § 2987, consumers have the right to terminate their lease early in connection with the purchase or lease of another vehicle, and when doing so, the money owed to the lessor is the payoff as amortized, based upon the financial structure of the lease.

30. In light of consumers' right to trade in their vehicle during its lease, as well as the dealers' statutory right to accept vehicle trade-ins, we now turn to Defendants' violation of the UCL.

**DEFENDANTS' UNLAWFUL AND UNFAIR BUSINESS PRACTICES**

31. By way of example, let us suppose that a consumer who has 10 months left on their BMW lease is tired of driving the BMW and now wants to lease a different brand vehicle. When that consumer arrives at a different brand dealership and attempts to trade in their BMW, the different brand vehicle dealer is prevented from accepting the vehicle because Defendants refuse to allow non-BMW dealerships to accept their vehicles as a "trade-in" vehicle. The same is true if the consumer attempts to trade in the vehicle, or sell the vehicle, to an independent used vehicle dealership.

32. Instead, Defendants will only allow the consumer to trade in the vehicle with BMW brand vehicle dealerships. Defendants refuse to allow consumers to sell their BMWFS leased BMW vehicles to non-BMW franchise dealerships in order for consumers to capture the equity in the BMWFS leased BMW vehicles and this harms Plaintiff and the Class since they are prevented from obtaining the equity.

33. Defendants are preventing dealerships, such as Plaintiff and the Class Members, from exercising their right to purchase these leased vehicles as a trade-in pursuant to Vehicle Code § 11709.4c and Civil Code § 2987.

## ALLEGATIONS RELEVANT TO PLAINTIFF

34. At all times herein relevant, Plaintiff, a high-end luxury used vehicle dealership, has had numerous putative customers attempt to trade-in their BMW vehicles which were still under lease to Plaintiff, or sell their BMW vehicles to Plaintiff, only to have Defendants refuse and prohibit any attempt by Plaintiff to accept these vehicles as trade ins. Defendants have refused to allow Plaintiff to pay off the vehicles and take title.

35. Indeed, a November 4, 2021, correspondence from BMWFS makes explicit that BMW only allows "purchase of [a] leased vehicle or return or trade-in vehicle to an authorized BMW Center. BMW Financial Services will not honor payoffs received from third-party dealerships. In the event a payoff is received from a third-party dealership, BMW Financial Services will return the payment by mail to the original sender."

36. Defendants' conduct as alleged herein violates California's unfair business practices statute, California Business and Professions Code § 17200 et seq. (the "UCL").

37. Plaintiff and the putative class have suffered damage as a result of Defendants' violation of the UCL as explained further below.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action on behalf of itself, and all others similarly situated.

39. The class consists of all non-BMW vehicle dealerships in California whose right to accept trade-in vehicles and purchase BMW leased vehicles has been infringed and violated by virtue result of Defendants' violation of the UCL.

40. Plaintiff reserves the right to establish subclasses.

41. There is a well-defined community of interest, and the class is readily ascertainable:

(a) Numerosity: The members of the class are so numerous that joinder is unfeasible and impractical. The membership of the entire class is unknown to Plaintiff at this time. However, the class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable.

(b) Typicality: Plaintiff's claims are typical of the class members with whom it has a well-defined community of interest.

(c) Adequacy: Plaintiff will fairly and adequately protect the interests of each class member. Plaintiff acknowledges it has an obligation to make known any relationship, conflicts, or differences with any class member. Plaintiffs' attorneys are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred and will continue to incur costs and attorneys' fees to prosecute the action for the benefit of each class member.

(d) Superiority: Class action adjudication is superior to other methods, as it will achieve economies of time, effort and expense compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner for the entire class.

42. There are common questions of law and fact as to the class (and subclass, if any) that predominate over questions affecting only individuals, including but not limited to whether Defendants engaged in unfair competition.

## FIRST CAUSE OF ACTION

## VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (Against All Defendants)

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above and, to the extent necessary, pleads this cause of action in the alternative.

44. California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."

45. Defendants violated the UCL by refusing to allow licensed vehicle dealers to accept Defendants' leased vehicles as "trade-ins"—in violation of Vehicle Code §11709.4 and Civil Code § 2987.

46. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff has suffered injury in fact and lost money or property and will continue to do so.

47. Plaintiff lost approximately $25,000 per potential trade-in foreach trade-in that could not get consummated based on Defendants' policy described above.

48. Pursuant to Cal. Civ. Code, § 2987(d)(1), the lessor or holder of the lease contract shall act in good faith and in a commercially reasonable manner in connection with the disposition of the vehicle.

49. Further, the Vehicle Act Leasing Act specifically acknowledges that vehicle leases may be assigned. See, e.g., Cal. Veh. Code § 2986.10(a).

50. Since Defendants impinged on Plaintiff's ability to process vehicle trade-ins, Plaintiff suffered damages equal up to $25,000 per potential trade-in.

51. This is because BMWFS handles financing for many types of vehicles including BMW, Mini, and Rolls-Royce.

52. Plaintiff specializes in high value vehicles which include Rolls-Royce and upper end BMW X Models.

53. For example, Plaintiff was not able to trade in Rolls-Royce vehicles, which range from $200,000 to $300,000. Plaintiff was able to recoup 10% from those trade-ins before Defendants changed the policy that is the subject of this case.

54. However, since the COVID-19 situation described above and Defendants' policy change that does not allow non-affiliated BMW dealerships to trade in BMW

-9-

1  vehicles, Plaintiff has lost income on at least one potential Rolls-Royce trade-in.

2      55. Similarly, on at least one occasion, Plaintiff was not able to trade in BMW X5

3  vehicles which had a value of about $75,000, so Plaintiff could not recoup the 10%

4  ($7,500 each).

5      56. On at least one occasion, Plaintiff was also not able to trade in BMW X7

6  vehicles which had a value of approximately $100,000, so Plaintiff could not recoup

7  the 10% ($10,000) from those potential trade-ins.

8      57. Thus, Plaintiff has standing since it lost the ability to recoup from at least three

9  potential trade-ins, which was the result of Defendants' violation of the Unfair

10  Competition Law.

11

12                              **Unfair Prong**

13      58. An act or practice is "unfair" if the consumer injury is substantial; is not

14  outweighed by any countervailing benefits to consumers or to competition; and is not

15  an injury the consumers themselves could reasonably have avoided. An act or

16  practice also is unfair if it offends an established public policy or is immoral,

17  unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act

18  or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional,

19  statutory or regulatory provisions.

20      59. Defendants' actions constitute an "unfair" business practice because

21  Defendants refused to allow Plaintiff to exercise his statutory right to accept a trade-

22  in vehicle for value pursuant to Vehicle Code § 11709.4 and Civil Code § 2987.

23      60. Defendants' business practices are unfair because they offend established

24  public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or

25  substantially injurious to consumers in that consumers are being prevented from

26  exercising their statutory rights as alleged herein.

27      61. Additionally, conduct is "unfair" because it is tethered to a specific

28  constitutional, statutory or regulatory provision. Here, Defendants' unfair conduct is

tethered to its interference with Plaintiff's statutory rights pursuant to Vehicle Code § 11709.4 and Civil Code § 2987.

62. All of the acts and practices of Defendants as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of Defendants' unfair business acts and practices as set forth herein.

63. Defendants' conduct is unfair because it prevents consumers from having any hope at all of capturing any of the equity in their lease, or terminating their lease early, unless the consumer pays out of their own pocket to pay the vehicle off, sells the vehicle to a BMW dealership, or trades-in the vehicle at a BMW dealership.

64. From a practical perspective, consumers often lack the desire or liquidity to pay off their leased vehicles. As a result, consumers who wish to terminate their lease early or capture any of the equity in their lease are forced to do so at a BMW dealership. This unfair and unlawful conduct unfairly prevents non-BMW dealerships from transacting business.

65. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff has suffered damages.

66. Plaintiff could not reasonably avoid the injury suffered or the injury that will be suffered. Defendants' conduct only benefits Defendants themselves.

67. The gravity of the conduct as described above outweighs the justification, motive, or reason therefor, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, and is substantially injurious to the public, for the reasons set forth above.

68. Defendants could have and should have furthered their legitimate business interests by allowing non-BMW dealerships to accept BMW vehicles as trade-ins.

-11-

69.   Defendants could have and should have furthered their legitimate business interests by abstaining from aggressively interfering with the statutory rights of other dealerships and consumers.

70.   To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Defendants' justification and motives for its conduct, and as to the impact of Defendants' conduct on Plaintiff and others.

71.   Defendants' acts of unfair an unlawful conductas set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs.

### **Unlawful Prong**

72.   A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

73.   The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

74.   Pursuant to Vehicle Code § 11709.4 and Civil Code § 2987, a lessee has the right to terminate a lease contract at any time prior to the date specified in the lease contract. Importantly, there is a mathematical methodology for any dealership—including BMW—which is utilized to determine the vehicle payoff. When consumers attempt to terminate that contract by trading in or selling their leased vehicles at non-BMW dealerships, Defendants interfered with Plaintiff's and the Class Members' rights, per California Vehicle Code § 11709.4 and California Civil Code § 2987, by refusing to allow the vehicles to be traded in at a non-BMW dealership, leading to economic damage, which as explained above could be up to $25,000 per lost vehicle trade-in.

75.   Thus, Defendants violated the UCL by violating California Vehicle Code § 11709.4 and California Civil Code § 2987.

76.   Defendants' unlawful acts as set forth above present a continuing threat to the existence and vitality of the used car market, and these unlawful acts will persist and continue unless and until this Court issues appropriate injunctive relief.

77.   This is because the remedy at law is inadequate for future conduct, as an injunction is the only available method to prevent Defendants from continuing to prevent non-affiliated BMW dealerships from vehicle trade-ins; prospective relief to prevent unfair and/or unlawful business practices does apply to an Unfair Competition Law cause of action. *California Ass'n of Dispensing Opticians v. Pearle Vision Ctr., Inc*., 143 Cal.App.3d 419, 433-434 (1983).

78.   Plaintiff and other dealerships rely on customer satisfaction to fuel their business. When customers are prevented from approaching dealerships to trade in their vehicles, this harms Plaintiff and other dealerships. There are numerous customers who have not provided business to independent dealerships such as Plaintiff based on Defendants' policy change not to allow vehicle trade-ins with independent dealerships.

79.   Plaintiff and other dealerships continue to be harmed by Defendants' unfair and unlawful business practices because they are continuing to lose out on business and customer streams.

80.   Thus, damages are an inadequate remedy at law because without an injunction that would prevent Defendants from refusing to allow vehicle trade-ins with independent dealerships, the harm to Plaintiff and other dealerships is imminent and unavoidable without the injunction.

81.   In turn Plaintiff seeks injunctive relief and attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

## **JURY DEMAND**

82.   Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

///

1

## **PRAYER FOR RELIEF**

2  WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

3  First Cause of Action

4     1.  For an order enjoining Defendants from refusing to allow vehicle dealerships

5         the ability to exercise their statutory right to accept vehicle trade-ins pursuant

6         to Vehicle Code § 11709.4 and Civil Code § 2987, and restitution.

7     2.  Attorneys' fees and costs pursuant to Code of Civil Procedure § 1021.5

8     3.  Pre-judgment interest; and

9     4.  For other relief that this Court deems just and proper.

10

11  Date: October 10, 2022                 LAW OFFICE OF ROBERT L. STARR

12

13                          /s/ Adam Rose

                        Attorney for Plaintiff

14                          Calabasas Luxury Motorcars, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28