STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 83013)
ARJUN P. RAO (State Bar No. 265347)
DAVID W. MOON (State Bar No. 197711)
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086
Telephone: 310-556-5822
Facsimile: 310-556-5959
Email: *lacalendar@stroock.com*

Attorneys for Defendants
    BMW OF NORTH AMERICA, LLC and
    BMW FINANCIAL SERVICES NA, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC., | Case No. 2:21-cv-08825-DMG-AS |
| Plaintiff, | [Assigned to Hon. Dolly M. Gee] |
| v. | **REPLY OF DEFENDANTS BMW OF NORTH AMERICA, LLC AND BMW FINANCIAL SERVICES NA, LLC IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| BMW OF NORTH AMERICA, LLC; BMW FINANCIAL SERVICES NA, LLC; and DOES 1 through 10, | |
| Defendants. | Hearing Information:<br>Date:   December 16, 2022<br>Time:  9:30 A.M.<br>Room: 8C |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................... 1

II.     ARGUMENT ................................................................................................ 2

        A.      Plaintiff's UCL Claim Fails in Its Entirety as a Matter of Law............... 2

                1.      Plaintiff Fails to Allege an "Unfair" Business Practice................. 2

                2.      Plaintiff Fails to Allege an "Unlawful" Business Practice. ........... 5

        B.      Plaintiff Is Not Entitled to Restitution Under the UCL. ........................ 11

III.    CONCLUSION ........................................................................................... 12

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52720631

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Calabasas Luxury Motorcars, Inc., v. General Motors LLC, et al.,
  No. 21-cv-09566-TJH(PDx), 2022 WL 17348983 (C.D. Cal. Aug.
  25, 2022) ............................................................................................. 3, 4, 5

Camacho v. Auto. Club of Southern Cal.,
  142 Cal. App. 4th 1394 (2006) ............................................................... 4

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
  20 Cal. 4th 163 (1999) ......................................................................... 2, 3

City of San Jose v. Office of the Com'r of Baseball,
  776 F.3d 686 (9th Cir. 2015) ................................................................... 3

Escobar, Inc. v. Klarna, Inc.,
  No. 20-cv-4908-DMG-GJSx, 2021 WL 840180 (C.D. Cal. Jan. 4,
  2021) ........................................................................................................ 5

Kwikset Corp. v. Super. Ct.,
  51 Cal. 4th 310 (2011) ........................................................................... 11

Lazar v. Hertz Corp.,
  69 Cal. App. 4th 1494 (1999) .............................................................. 6, 9

Levitt v. Yelp! Inc.,
  765 F.3d 1123 (9th Cir. 2014) ............................................................. 2, 3

Madrid v. Perot Sys. Corp.,
  130 Cal. App. 4th 440 (2005) ................................................................ 11

Mares v. Baughman,
  92 Cal. App. 4th 672 (2001) ................................................................ 6, 9

Shersher v. Super. Ct.,
  154 Cal. App. 4th 1491 (2007) .............................................................. 11

Von Becelaere Ventures, LLC v. Zenovic,
  24 Cal. App. 5th 243 (2018) .................................................................... 8

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52720631

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

**Statutes**

15 U.S.C. § 1667b ............................................................................................... 8

Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> ........................................................... 11

Cal. Civ. Code § 2987 ................................................................................. *passim*

Cal. Civ. Code § 2988 ............................................................................. 1, 2, 7, 8

Cal. Civ. Proc. Code § 1858 ............................................................................... 9

Cal. Veh. Code § 11709.4 ...................................................................... 1, 6, 10, 11

**Regulations**

12 C.F.R. § 1013.2(i) .......................................................................................... 9

12 C.F.R. pt. 1013, Supp. I ................................................................................ 9

**Other Authorities**

CFPB, <u>Consumer Laws and Regulations: Consumer Leasing</u>,
    https://files.consumerfinance.gov/f/documents/102012_cfpb_consum
    er-leasing-act_procedures.pdf (last visited Dec. 2, 2021) ...................... 9

# I.   INTRODUCTION

Plaintiff's latest attempt to manufacture a right to take assignment of BMW lessees' purchase rights—and thereby capture for itself the equity in the lessees' vehicles—is without merit.  Plaintiff has now had three opportunities to plead viable claims.  Because the defects in the Second Amended Complaint are not curable through further amendment, Defendants respectfully request that the Second Amended Complaint be dismissed with prejudice.

***First***, Plaintiff does not (and cannot) allege an "unfair" business practice under the UCL.  Indeed, Plaintiff continues to rely on a standard of "unfairness" under the UCL that applies only in consumer cases and ***that this Court expressly rejected in granting Defendants' motion to dismiss the First Amended Complaint***.  (See ECF No. 31 at 3.)  Moreover, as detailed in the Motion (see Mot. 9:12-10:8), there is nothing "unfair" about BMW FS's alleged practices even under the various consumer standards.  As this Court has already found, exclusive-dealing arrangements are perfectly lawful as long as competitive products are available, and Plaintiff fails to plausibly allege how consumers have been harmed.  Indeed, Plaintiff's business model as described in the Opposition is based on capturing equity for itself that would otherwise be captured ***by the lessees*** through the lessees' exercise of the lease purchase option.  At the least, Plaintiff does not establish that consumers receive better deals from non-authorized dealers like Plaintiff than from authorized BMW dealerships.

***Second***, Plaintiff does not and cannot allege an "unlawful" business practice. Plaintiff's argument that there is an "implied statutory right" under Civil Code section 2987 and Vehicle Code section 11709.4 for non-authorized dealers to purchase leased vehicles violates well-established rules of statutory construction, which prohibit courts from inserting statutory terms that do not exist.  Plaintiff's argument in the Opposition that Civil Code section 2988 supports Plaintiff's

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

-1-

LA 52720631

interpretation of section 2987 is without merit as Plaintiff's argument is based on a misreading of the publisher's title to this section, not the statute itself.  Moreover, section 2988 addresses liability at the end of the lease term, not upon early termination, and it applies to open-end leases rather than closed-end leases, which are the only leases at issue here.

*Third*, even if Plaintiff's claims were not otherwise deficient for the reasons summarized above, Plaintiff cannot obtain restitution under the UCL.  Plaintiff argues that the Motion should be denied in this regard because Plaintiff has statutory standing under the UCL.  However, Defendants did not argue in the Motion that Plaintiff lacked statutory standing.  Instead, Defendants argued that Plaintiff's claim for restitution under the UCL must be dismissed because Plaintiff does not (and cannot) allege that it paid money to Defendants.

Accordingly, Defendants respectfully request that the Motion be granted in its entirety and without leave to amend.

## II.    ARGUMENT

**A.    Plaintiff's UCL Claim Fails in Its Entirety as a Matter of Law.**

### 1.    Plaintiff Fails to Allege an "Unfair" Business Practice.

As detailed in the Motion (see Mot. 7:11-10:9), the correct test for "unfairness" between businesses (including both direct competitors and other market participants) is the test articulated by the California Supreme Court in Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999).  Under the Cel-Tech test, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  Levitt v. Yelp! Inc., 765

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52720631

F.3d 1123, 1136 (9th Cir. 2014) (quoting <u>Cel-Tech</u>, 20 Cal. 4th at 187).[1]  "[T]he determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' . . . ."  <u>City of San Jose v. Off. of the Comm'r of Baseball</u>, 776 F.3d 686, 691-92 (9th Cir. 2015) (quoting <u>Chavez v. Whirlpool Corp.</u>, 93 Cal. App. 4th 363, 375 (2001)).  A UCL claim predicated on an antitrust violation "is therefore barred so long as [defendant]'s activities are lawful under the antitrust laws."  <u>Id.</u>

As further explained in the Motion, in granting Defendants' motion to dismiss the First Amended Complaint, this Court explained that the three tests for unfairness cited by Plaintiff—the "balancing test," the "tethering test" and the "section 5 test"—"***are not appropriate in this case***" because "***these tests are used to evaluate unfairness in consumer cases, not between business competitors***."  (ECF No. 31 at 3 (emphasis added) (citing <u>Levitt</u>, 765 F.3d at 1130 (citing <u>Cel-Tech</u>, 20 Cal. 4th at 187)).)[2]

---

[1] As explained by the Ninth Circuit, the <u>Cel-Tech</u> standard applies not only in suits by direct competitors, but also where a non-competitor defendant's conduct allegedly injures plaintiff's economic interests to the benefit of defendant and other businesses. <u>See</u> <u>Levitt</u>, 765 F.3d at 1136.

[2] The Court further concluded that Defendants' alleged conduct was not "unfair" under the applicable <u>Cel-Tech</u> standard because Defendants' conduct did not violate any antitrust laws.  Among other things, the Court found that BMW FS is a wholly owned subsidiary of BMW NA, and thus Defendants are treated as one entity with a single unity of interest.  (<u>See</u> ECF No. 31 at 4 (citing <u>In re Auto. Antitrust Cases I & II</u>, 1 Cal. App. 5th 127, 155 (2016) (citing <u>Copperweld Corp. v. Indep. Tube Corp.</u>, 467 U.S. 752, 769-71 (1984)).) <u>See also</u> <u>Calabasas Luxury Motorcars, Inc., v. General Motors LLC, et al.</u>, No. 21-cv-09566-TJH(PDx), 2022 WL 17348983, at *2 (C.D. Cal. Aug. 25, 2022) (dismissing complaint and concluding that subsidiaries controlled by a common parent cannot conspire with each other under antitrust law as there is a single unity of interest).  The Court further reasoned that the antitrust laws do not prohibit a business from unilaterally determining the parties with which it will deal and the terms on which it will transact business.  (<u>Id.</u> (citing <u>G.H.I.I. v. MTS, Inc.</u>, 147 Cal. App. 3d 256, 258 (1983), and <u>U. S  v. Colgate & Co.</u>, 250 U.S. 300, 308 (1919)).)  In particular, the Court observed that a manufacturer is allowed to "franchise certain dealers to whom, alone, he will sell his goods [. . . as long as] competitive products are readily available to others."  (<u>Id.</u> (quoting <u>U. S. v. Arnold,</u>

-3-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52720631

In the Opposition, ***Plaintiff simply ignores this Court's analysis***.  Plaintiff cites Camacho v. Auto. Club of Southern Cal., 142 Cal. App. 4th 1394, 1403 (2006), for the proposition that "[o]ne test that defines unfairness is: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  (Opp'n 7:5-9.)  However, as this Court has already held, and as the Camacho court itself explained, the three-part "section 5" test cited by Plaintiff ***applies only in consumer cases***.  See Camacho, 142 Cal. 4th at 1403 ("This definition of 'unfair' is on its face geared ***to consumers*** and is for that reason appropriate ***in consumer cases***.") (emphasis added).

Moreover, and as further detailed in the Motion (see Mot. 9:12-10:8), there is nothing "unfair" about BMW FS's alleged practices even under the consumer standards.  A lessor has the right to sell off-lease vehicles that it owns as it sees fit, just as a manufacturer or distributor of new motor vehicles may require its vehicles to be sold only through authorized dealerships.  Indeed, as this Court has already found, these types of exclusive-dealing arrangements are perfectly lawful as long as competitive products are available.  (See ECF No. 31 at 4.)  Moreover, Plaintiff fails to plausibly allege how consumers are harmed.  Indeed, Plaintiff's business model as described in the Opposition is based on "obtaining the equity" that would otherwise be captured ***by the consumer*** through the exercise of the purchase option.  (See Opp'n 12-13.)  At the least, Plaintiff does not establish that lessees receive better deals from non-authorized dealers like Plaintiff than from authorized BMW dealerships.

Finally, there is nothing in the Second Amended Complaint that suggests that BMW NA (as opposed to BMW FS) engaged in any purportedly unfair conduct.

Schwinn & Co., 388 U.S. 365, 376 (1967), overruled on other grounds by Cont'l T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36 (1977)).)  As the Court found, "[o]ther vehicles on the market are competitive with those leased by BMW—and [Plaintiff] does not plausibly allege otherwise."  (Id.)

-4-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Unlike BMW FS—which is alleged to be a party to the lease agreements at issue (2d. Am. Compl. ¶¶ 23, 24, 32) and to have issued correspondence stating that it would not accept lease payoffs from third-party dealerships (id. ¶ 35)—there are no allegations that BMW NA is a party to the lease agreements, had any communication with Plaintiff or refused to accept a lease payoff.  Plaintiff's allegations that lump "Defendants" or "BMW" together are distinctly improper, as there are no factual allegations sufficient to establish that BMW NA engaged in any unfair conduct.[3]

### 2. Plaintiff Fails to Allege an "Unlawful" Business Practice.

### a. Plaintiff Fails to Allege a Violation of Civil Code Section 2987.

As stated in the Motion, California Civil Code section 2987 provides lessees with a statutory right to terminate a vehicle lease contract at any time, sets certain limits on the lessee's early-termination liability and establishes the selling price if the lessee purchases the vehicle from the lessor.  See Cal. Civ. Code § 2987(a)-(f).  As relevant here, section 2987 also prohibits adverse credit reporting if the lessee terminates the lease, returns the vehicle to the lessor and pays all amount owed under the lease as limited by section 2987.  Cal. Civ. Code § 2987(g).

Section 2987 *does not address non-authorized dealers at all*, nor does it purport to grant rights to anyone other than the lessee.  In particular, nothing in section 2987 allows a lessee to "trade in" a leased vehicle with a non-authorized dealer—nor could it, *since the lessee does not own the vehicle*.[4]

---

[3] As stated in the Motion, "[l]umping together" different defendants "fails to meet Rule 8's requirement that a pleading 'provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them.'"  Escobar, Inc. v. Klarna, Inc., No. 20-cv-4908-DMG-GJSx, 2021 WL 840180, at *3 (C.D. Cal. Jan. 4, 2021) (Gee, J.) (quoting Doe One v. CVS Pharmacy, Inc., 348 F. Supp. 3d 967, 979-80 (N.D. Cal. 2018)) (quoting Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015)).

[4] Indeed, this exact conclusion was reached by Judge Hatter, Jr. in a nearly identical action filed by Plaintiff against General Motors.  See Calabasas Luxury Motorcars, Inc. v. General Motors LLC, et al., No. 21-cv-09566-TJH(PDx), 2022 WL 17348983, at *3 (C.D. Cal. Aug. 25, 2022) (dismissing Plaintiff's "unlawful" claim

-5-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52720631

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    In the Opposition, Plaintiff argues that there is an "implied statutory right"

2  under Civil Code section 2987 and Vehicle Code section 11709.4 for non-authorized

3  dealers to purchase leased vehicles because otherwise both sections "would be

4  rendered completely nugatory." (Opp'n 2:23-28.)  This argument is meritless.

5  "[L]ong-accepted rules" of statutory construction in California "require a court, when

6  interpreting a statute, to examine only its express terms, and not to 'insert what has

7  been omitted.'" <u>Mares v. Baughman</u>, 92 Cal. App. 4th 672, 677 (2001) (quoting Cal.

8  Civ. Proc. Code § 1858 ("In the construction of a statute or instrument, the office of

9  the Judge is simply to ascertain and declare what is in terms or in substance

10  contained therein, not to insert what has been omitted, or to omit what has been

11  inserted . . . .")).  "[A court] may not speculate that the Legislature meant something

12  other than what it said, nor may [the court] rewrite a statute to make express an

13  intention that did not find itself expressed in the language of that provision." <u>Lazar</u>

14  <u>v. Hertz Corp.</u>, 69 Cal. App. 4th 1494, 1503 (1999).

15    Here, section 2987(f) provides, in pertinent part: "***if*** . . . the lessee terminates

16  the lease and purchases the vehicle . . . ."  Cal. Civ. Code 2987(f).  Section 2987(f)

17  does ***not*** state that the lessee has a right to purchase the vehicle, which the

18  Legislature could have done quite easily.  <u>Cf.</u> Cal. Civ. Code § 2987(a) ("A lessee

19  ***has the right*** to terminate a lease contract at any time . . . .")  ***Nor does section***

20  ***2987(f) say anything about non-authorized dealers having a right to purchase***

21  ***vehicles***.  Under California's well-settled rules of statutory construction, a court

22  cannot insert language into a statute that is not there.

23    Moreover, section 2987 has nothing to do with non-authorized dealers' rights.

24  Section 2987 guarantees a right to early termination, sets limits on the lessee's

25  liability and prevents negative credit reporting arising out of an early termination.

26  
27  under UCL because "Sections 11709.4 and 2987 govern any trade-ins that might take
place, ***but there is nothing in those statutes or, apparently, in case law, that***
28  ***requires trade-ins to take place***.") (Emphasis added).

-6-

LA 52720631

None of these rights would be affected in the slightest if Plaintiff's unsupported argument were rejected.

Plaintiff's contention that a third-party payoff right is revealed by a "discerning evaluation" of subdivisions (f) and (g) of section 2987 is equally meritless. Subdivision (f) limits the sale price when a lessor purchases the vehicle. Subdivision (g) prohibits adverse credit reporting when a lessee returns a vehicle *to the lessor*. If Plaintiff's interpretation were true, the Legislature intentionally prohibited adverse credit reporting *only* for trade-ins with the lessor but *not* for trade-ins with third party, non-authorized dealers (which would not be *a lessor*), which makes no sense. The far more logical reading is that subdivision (f) contemplates either a purchase (which, by definition, must be *from the lessor*) or a trade-in and purchase or lease of "another" vehicle *from the lessor*. Thus, the more logical reading is that section 2987 does not address purchases and trade-ins by third party non-authorized dealers at all.

In any event, even if section 2987(f) applied when a lessee trades in a vehicle to a third party, it would have no application here because BMW FS's lease agreement prohibits consumer lessees from assigning their purchase rights without prior written approval. (ECF No. 24-1 ¶ 35.) Section 2987 simply does not grant purchase rights to non-authorized dealers.

### b. Civil Code Section 2988 Is Irrelevant.

Plaintiff argues for the first time in the Opposition that not allowing Plaintiff to take assignment of a lessee's expressly non-assignable purchase right "is particularly unpalpable [sic] in light of the fact that Civ. Code § 2988, in its title, makes explicit that 'the lessee will bear the risk of the motor vehicle's depreciation.'" (Opp'n 3:13-16.) Plaintiff does not allege that Defendants violated section 2988; instead, Plaintiff contends that "[t]he apparent reason that [section] 2987 allows both a consumer to trade in their vehicle and the dealer to accept the

LA 52720631

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

vehicle is because [section] 2988 places all the risk of the vehicle's depreciation on the lessee." (Opp'n 3:17.) Respectfully, this argument is incoherent.

*First*, the "title" of section 2988 is not part of the statute and has no bearing on its interpretation in any event. See <u>Von Becelaere Ventures, LLC v. Zenovic</u>, 24 Cal. App. 5th 243, 249 (2018) ("Titles inserted by publishers in commercial versions of the statute do not indicate legislative intent and are not binding on the court. . . . In any event, a provision's title is never allowed to enlarge or control the language in the body of the [provision]." (Internal quotation marks omitted)).[5]

*Second*, section 2988 addresses liability ***at the end of the lease term*** and the reasonableness of the estimated residual value, while section 2987 deals with liability ***upon early termination***. The two sections have nothing to do with each other.

*Third*, section 2988 is the state analogue of 15 U.S.C. § 1667b, which is part of the federal Consumer Leasing Act. Like its federal counterpart, section 2988 expressly applies only to open-end leases. Contrary to Plaintiff's assertion in the Opposition, consumer lessees generally do ***not*** bear the risk of a vehicle's depreciation at the end of the lease because all or nearly all consumer vehicle leases in California are ***closed-end*** leases like the BMW FS leases at issue here. (See ECF No. 24-1 Ex. A.) Under a closed-end lease, the lessee is only liable at the end of the lease term for things like excess wear and mileage. Section 2988 addresses ***open-end*** leases, which are not at issue in this case. In interpreting the federal Consumer Leasing Act (upon which California's Vehicle Leasing Act is based), the Bureau of Consumer Financial Protection has helpfully explained:

**Open-End Lease**

---

[5] Unintentionally proving the point, Plaintiff actually quotes two different "titles" for section 2988. (<u>Compare</u> Opp'n 3:13-16 <u>with</u> <u>id.</u> at 5:24-25.) The text of section 2988 is available at https://leginfo.legislature.ca.gov/faces/codes_displaySection.xht ml?sectionNum=2988&lawCode=CIV.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

LA 52720631

An open-end lease is a lease in which the amount owed at the end of the lease term is based on the difference between the residual value of the leased property and its realized value. The consumer may pay all or part of the difference if the realized value is less than the residual value or he may get a refund if the realized value is greater than the residual value at scheduled termination.

**Closed-End Lease**

A closed-end lease is a lease other than an open-end lease. This type of lease allows the consumer to "walk away" at the end of the contract period, with no further payment obligation – unless the property has been damaged or has sustained abnormal wear and tear.

CFPB, Consumer Laws and Regulations: Consumer Leasing, https://files.consumerfinance.gov/f/documents/102012_cfpb_consumer-leasing-act_procedures.pdf (last visited Dec. 2, 2021).[6]

In short, Plaintiff's contention that the leases at issue put the risk of depreciation on the consumer is baseless. However, even if Plaintiff were not completely mistaken on this point (which it is), the rules of statutory construction do not allow speculating on Legislative intent and inserting provisions into statutes that simply are not there. See Cal. Civ. Proc. Code § 1858; Mares, 92 Cal. App. 4th at 677; Lazar, 69 Cal. App. 4th at 1503.

---

[6] See also 12 C.F.R. § 1013.2(i) ("Open-end lease means a consumer lease in which the lessee's liability at the end of the lease term is based on the difference between the residual value of the leased property and its realized value."); 12 C.F.R. pt. 1013, Supp. I, Comment 3(d)-3 ("*Residual value of leased property at termination*. In an open- end lease where the lessee's liability at the end of the lease term is based on the residual value of the leased property as determined at consummation, the estimate of the residual value must be reasonable and based on the best information reasonably available to the lessor (see Sec. 1013.4(m)). A lessor should generally use an accepted trade publication listing estimated current or future market prices for the leased property unless other information or a reasonable belief based on its experience provides the better information.").

-9-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52720631

**c.**     **Plaintiff Fails to Allege a Violation of Vehicle Code Section 11709.4.**

Plaintiff's reliance on California Vehicle Code section 11709.4 is similarly misplaced.  Section 11709.4 imposes certain requirements on motor vehicle dealers "when a dealer purchases or obtains a vehicle in trade in a retail sale or lease transaction and the vehicle is subject to a prior credit or lease balance."  Cal. Veh. Code § 11709.4(a).  Thus, by its terms, section 11709.4 applies only to dealers, and only when a dealer "purchases or obtains a vehicle."  Id.  Here, however, Plaintiff alleges that it has *not* purchased or obtained vehicles subject to a prior credit or lease balance.  In other words, section 11709.4 would only come into play if BMW FS agreed to sell particular vehicles to Plaintiff, which it not at issue.  Section 11709.4 does not impose a duty *on lessors* to sell their leased vehicles to dealers any more than it imposes a duty on dealers to acquire vehicles subject to existing credit or lease balances.

In the Opposition, Plaintiff does not argue to the contrary.  Indeed, Plaintiff acknowledges that "Vehicle Code § 11709.4 sets forth the procedures which must be employed *by a vehicle dealer* . . . ."  (Opp'n 2:20-21 (emphasis added).)  Plaintiff does not (and cannot) cite any provision of section 11709.4 that Defendants violated because, on its face, section 11709.4 *applies only to dealers*.

Plaintiff's argument that section 11709.4 would be rendered "nugatory" is yet again inaccurate.  Vehicle Code section 11709.4 applies by its terms only "[w]hen a dealer purchases or obtains a vehicle in trade in a retail sale or lease transaction and the vehicle is subject to a prior credit or lease balance."  Cal. Veh. Code § 11709.4(a).  The fact that a statute does not apply to a particular transaction does not render the entire statute "nugatory"; rather, the statute simply does not apply to that particular transaction.  Here, section 11709.4(a) continues to apply to non-lease transactions and to leases where a lease purchase option is validly assigned.

-10-

LA 52720631

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    Plaintiff's conclusory assertions that Defendants violated section 11709.4—

2    which facially has no application here—must be rejected.

3    **B.    Plaintiff Is Not Entitled to Restitution Under the UCL.**

4    Plaintiff argues that the Motion should be denied because Plaintiff has

5    statutory standing under the UCL.  However, Defendants did not argue in the Motion

6    that Plaintiff lacked statutory standing.  Instead, Defendants argued that Plaintiff's

7    claim for restitution under the UCL must be dismissed because Plaintiff is not

8    entitled to restitution.

9    As previously briefed, to establish an entitlement to restitution under the UCL,

10   a plaintiff must show that the plaintiff lost money or property as a result of unfair

11   competition by the defendant ***and that the money or property was acquired by the***

12   ***defendant***.  See Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 336 (2011); Shersher

13   v. Super. Ct., 154 Cal. App. 4th 1491, 1498 (2007) (holding that restitution "must be

14   truly 'restitutionary in nature'—that is, it must represent the return of money or

15   property the defendant acquired through its unfair practices"); Madrid v. Perot Sys.

16   Corp., 130 Cal. App. 4th 440, 456 (2005) ("[P]laintiff fails to cite any authority that a

17   UCL plaintiff may recover money from a defendant who never received it on a

18   theory that the defendant conspired with or aided someone else who did receive

19   it.  This sounds like damages (which are unavailable under the UCL) rather than

20   restitution.").

21   Here, Plaintiff purports to seek restitution under the UCL.  (2d Am. Compl. 14

22   ¶ 1.)  However, Plaintiff does not (and cannot) allege that it paid money to either of

23   Defendants in connection with trade-ins that did not take place.  Plaintiff does not

24   (and cannot) argue otherwise.  Accordingly, Plaintiff's claim for restitution under the

25   UCL fails for this additional reason.

26   / / /

27   / / /

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

LA 52720631

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

### III.   CONCLUSION

For the foregoing reasons and for those set forth in the Motion, Defendants respectfully request that the Motion be granted in its entirety and without leave to amend.

Dated:  December 2, 2022

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
ARJUN P. RAO
DAVID W. MOON


By:_____ */s/ Arjun P. Rao*_____
                    Arjun P. Rao

Attorneys for Defendants
   BMW OF NORTH AMERICA, LLC and
   BMW FINANCIAL SERVICES NA, LLC

-12-

LA 52720631

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, a copy of the foregoing **REPLY IN SUPPORT OF MOTION OF DEFENDANTS BMW OF NORTH AMERICA, LLC AND BMW FINANCIAL SERVICES NA, LLC TO DISMISS SECOND AMENDED COMPLAINT** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Arjun P. Rao*
Arjun P. Rao

LA 52720631

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086